## 36256. ARNOLD *v.* THE STATE.

DECIDED JULY 9, 1956.

*Edward J. Goodwin*, for plaintiff in error.

*Andrew J. Ryan, Jr., Solicitor-General*, contra.

GARDNER, P. J.   1.  Since we are reversing the case on a special ground we will not here deal with the evidence, since if the case is tried again we do not know what the evidence might be on another trial.

2. (a) The first special assignment of error is as follows: "The court's charge on corroboration of a witness sought to be impeached to the effect, 'By disproving the facts testified to by him, may be corroborated by other testimony to the effect that the facts stated by him are true', is confusing and misleading and is not a correct statement of the law and even though it is not incumbent upon the court to charge the law on impeachment of witnesses, unless requested, yet where this matter of impeachment is gone into by the court, it was error not to have charged that a witness, in order to be sustained, must be corroborated by circumstances or other unimpeached evidence."

(b)  Special ground 2 reads as follows: "The court's failure to charge that where there is evidence of general bad character of witness, the witness in order to be sustained must offer evidence of good character. This was not charged, in the testimony as appears and was shown [?].  The testimony of Dave Shellman, the State's complaining witness, reveals his general bad character when he testified, on direct examination, he stated 'I was con-

victed in the city court here for transporting whisky the first part of this year; I pleaded guilty down in police court.' Also, 'I am a bootlegger; I've been sent to the Federal penitentiary twice.' Also, 'I said I've been in Federal court twice, and I've been sentenced once to Tallahassee, and once to a training school in Virginia, around Hopewell.' " The charge of the court regarding impeachment is as follows: "Now, there has been some conflict in the evidence here, and I am going to charge you the law on impeachment of witnesses. When witnesses appear and testify, they are presumed to speak the truth and are to be believed by the jury, unless impeached in some manner provided by law or otherwise discredited in your judgment. A witness may be impeached by disproving the facts testified to by him, or by proof of contradictory statements previously made by him of matters relevant to his testimony and to the case. A witness sought to be impeached by disproving the facts testified to by him may be corroborated by other testimony to the effect that the facts stated by him are true. Statements made out of court and not under oath are not evidence, but they are to be consdered by you on the question of impeaching, discrediting or sustaining the attacked witness. When the credibility of a witness is attacked, as by an effort to impeach him by any of the methods pointed out by law, the jury then become the triors of the credibility of the witness sought to be impeached and of the witness or witnesses by whose testimony the attack is made. You are to weigh the testimony and at last say whether you will discredit the testimony of the witness sought to be impeached. In a word, it is the exclusive province of the jury under all the attendant circumstances and conditions to determine whether a witness has or has not been impeached. The credibility of a witness is a matter to be determined by the jury and the jury determines what they will or will not believe. Decisions on questions of fact are exclusively within the province of the jury. When a witness has been successfully impeached by any of the legal methods, that is, where his unworthiness of credit is absolutely established in the minds of the jury, he ought not to be believed, and it is the duty of the jury to disregard his entire testimony, unless it is corroborated, in which case you may believe the witness, it being a matter of course always for the jury to determine whether a witness has or has not spoken the truth and

what they will or will not believe." As to special ground 1 there was no evidence introduced in the case concerning the general bad character of the victim in the robbery and therefore the assignment of error in the first special ground is without merit.

As to the second special ground it is true that the court was not required to charge on the impeachment of witnesses for the reason that the impeachment of the victim was in the case, if at all, on his statement concerning the facts in the case, and it is also true that should the trial judge of his own volition charge regarding the impeachment of witnesses he must charge fully concerning the facts regarding impeachment as they are involved in the case. The only evidence in the case involving impeachment was contradictory statements which the victim made concerning the robbery at the time it happened and in a preliminary trial in the Police Court of Savannah after the defendant allegedly robbed the victim Shellman. The robbery took place according to the evidence at Shellman's home. The evidence reveals that the defendant went to Shellman's home and called him out of his house, stating that he wanted to speak to him. When Shellman came out the defendant drew a gun on him and demanded his money. Shellman under such circumstances handed the money to the defendant. Peace officers arrived at Shellman's home and inquired of him who it was. Shellman then informed the officers that the description of the car compared with the description of the car owned by the defendant. The officers went on a search for the car which had been described to them, in an effort to locate the defendant. They were unable to locate the car or the defendant on the night of the robbery. The officers did locate the defendant the next morning in the car described to them. The defendant was in the car. He was arrested and required to appear at a subsequent day at the police court for a preliminary trial. Shellman and his wife were summoned to the police court as witnesses. Before the trial in the police court the peace officers had questioned Shellman and his wife concerning whether or not they knew the name of the person who had robbed him. They both stated that it was the defendant. They were summoned as witnesses in the police court and when they were put on the stand and questioned as to whether they knew the name of the person who robbed Shellman they both stated

while on the stand that they did not know his name. On this testimony the police court refused to bind the defendant over to the superior court to answer the charge of robbery. At the June 1955 term of the Superior Court of Chatham County the grand jury returned a special presentment against the defendant. Among the witnesses appearing for the State before the grand jury were Dave R. Shellman and his wife Addie Bell Shellman. The other witnesses appearing before the grand jury were the peace officers who investigated the case. In the testimony before the superior court the wife of Dave R. Shellman testified that she had changed her testimony from what she testified in the police court. She testified that she did know the defendant was the one who robbed her husband. Dave R. Shellman testified in this trial in the superior court that he had testified in the police court that he did not know the name of the person who robbed him, although he had told the peace officers that he did know. This witness also testified in the superior court that the reason he changed his testimony in the police court from what he had told the peace officers before the trial in the police court, that the defendant had gone to Dave R. Shellman between the time of the robbery and the trial in the police court and told him, the witness, Dave R. Shellman, that if he testified against him in the police court, he, the defendant, would kill both the witnesses, Dave R. Shellman, and his wife. He gave this testimony in the superior court on the trial of the case as the reason why he had so changed his testimony in the police court. On cross-examination Shellman admitted that he was a bootlegger and had served time in several different jurisdictions for violating the liquor laws. This special ground requires no reversal in and of itself.

There is one other special ground that is not numbered. It has the approval of the court and contains three special assignments of error on alleged failures to charge. That ground is as follows: "(1) Movant assigns as error the court's failure to charge and instruct the jury that in determining the credibility of the witnesses, they could consider the interest or lack of interest of the witnesses, their demeanor on the stand, and their opportunity of knowing the facts about which they testified. (2) In failing to charge the jury, in substance, that where a witness has been successfully contradicted as to a material matter, his credit as to

other matters is for them to determine; but if they believe that a witness has knowingly and wilfully sworn falsely about a material matter, all of his testimony should be rejected unless corroborated by circumstances or other unimpeached evidence; . . . (3) In failing to instruct the jury on the subject of sustaining an impeached witness." As we have stated above, the trial court is not required to charge on the impeachment of witnesses, but if it should charge on the subject, the charge must be full and complete. See *Moore* v. *State,* 55 *Ga. App.* 157 (1) (189 S. E. 551). From the charge of the court which we have set out hereinabove, it appears that the court failed to instruct the jury as to these three assignments of error last mentioned and it is our opinion that the failure to so charge requires a reversal of the case.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*